# FARNEY DANIELS LLP

800 South Austin Ave., Suite 200
Georgetown, Texas 78626-5845
512-582-2828

www.farneydaniels.com

February 10, 2012

| | |
|---|---|
| Honorable Donovan W. Frank | Honorable Steven E. Rau |
| United States District Court | Magistrate Judge |
| for the District of Minnesota | United States District Court |
| 724 Federal Building | 334 Warren E. Burger Federal Courthouse |
| 316 N. Robert Street | 316 N. Robert Street |
| St. Paul, MN 55101 | St. Paul, MN 55101 |

Re:  *In re: Vehicle Tracking and Security System ('844) Patent Litigation*; MDL No. 11-2249 (DWF/SER)

Dear Judge Frank and Magistrate Rau:

Plaintiff PJC Logistics LLC submits this letter brief to the Court to address the so-called "chicken-and-egg" issue that arose between the parties in the recent status hearing relating to the exchange of early infringement contentions. As set forth in the Court's Order No. 2 issued following the hearing, the Court ordered that the parties submit simultaneous briefing on "the issue of who should proceed first with specified disclosures." In the accompanying footnote, the Court further elaborated upon the issue to be addressed in the briefing:

> Defendants assert that Plaintiff should proceed first with specific infringement disclosures relating to each allegedly infringing device of which the Plaintiff is aware and that these disclosures should be as specific as possible, for example identifying each device by name or model number, if known. Plaintiff asserts that Defendants should proceed first by identifying the specific fleet management systems used by each Defendant.

Since the hearing, Plaintiff approached Defendants in an attempt to reach a resolution of the issue in a manner that would avoid taking up the Court's time. Unfortunately, Defendants' response was not to address resolution of the issue posed by the Court above, but instead to make a new, separate and additional demand for discovery into Plaintiff's pre-filing investigations. That issue is not the subject of the Court's order, and Plaintiff does not address it here.[1]

With respect to the issue on which the Court sought briefing -- the "chicken-and-egg" issue -- a thoughtful consideration reveals that the issue presents different questions for each of three different groups of Defendants. Those groups are the device manufacturers, and the trucking companies, where the trucking companies divide into two sub-groups. Those two sets

---

[1] Should any particular Defendant wish to raise pre-filing investigation issues, they may of course do so, if appropriate, using the process set forth in the Federal Rules of Civil Procedure.

of trucking companies are: (1) the trucking companies who have not admitted to having relevant units; and (2) those trucking companies that admitted using relevant units, which are now licensed, and whose original counsel indicated they used other relevant fleet management systems, which have not yet been identified to Plaintiff.  Plaintiff addresses each in turn.[2]

### I.      Manufacturers

With respect to the trucking manufacturers, Plaintiff does not believe there is any issue. Plaintiff will supply appropriate preliminary infringement contentions as to their products known to Plaintiff in a timely manner.  Plaintiff suggests that a reasonable date would be thirty days after the Court's order on the issue.

### II.     Trucking Companies

As noted, the trucking companies that remain as Defendants involve two groups. Plaintiff's proposal for each respective group is addressed below.  Then, Plaintiff follows with an additional proposal that applies to both trucking groups.

#### A.      Trucking Companies Who Have Not Admitted Having Relevant Units

With respect to the 17 remaining trucking companies who have not yet admitted having relevant units, Plaintiff proposes that it also will provide its initial contentions on the same schedule as for the manufacturers.

However, four companies in this group filed counterclaims of noninfringement.  Plaintiff presumes that these companies, and their counsel, acted in good faith in so counterclaiming.[3] But their filing should mean one of two things:  either the company has no relevant fleet management systems at all; or it does have fleet management system(s) that it evaluated, and on the basis of that evaluation concluded there was a basis to deny infringement.  Plaintiffs believe that the following procedure should apply to the counterclaiming defendants in this category.

For those Defendants who counterclaimed on the basis that a relevant fleet management system used by them does not satisfy the claims of the asserted patent, they should be required to identify the fleet management system or systems on which they based their counterclaim of noninfringement, and the basis for that contention, on the same date as Plaintiff's contentions are due.  For those counterclaiming Defendants in this group that counterclaimed in the belief that they had no relevant fleet management system at all, they should make that position known to

---

[2] Plaintiffs direct this letter brief to the trucking-related Defendants who were addressed at the hearing.  As to the auto-related Defendants now in the process of being added to the MDL, Plaintiffs expect to work out a schedule for initial contentions with those Defendants as part of the Rule 26(f) submission.  Plaintiff expects its contentions with respect to the auto-related Defendants to be handled in a manner similar to the manufacturer Defendants.

[3] Plaintiff notes that by according Defendants' counsel this presumption of good faith, Plaintiff stands in contrast to the approach being taken by counsel for some of the Defendants.

Plaintiff within two weeks of the Court's order on this issue. Plaintiff will then enter into good faith discussions to dismiss that party if it is determined that the filing was somehow in error. If on the other hand, it is determined that such a Defendant has some relevant fleet management systems, and that the issue is really one of a difference of opinion on whether it infringes, then that Defendant should then simply submit its contentions on the same day as Plaintiff's contentions are due.

**B.     Trucking Companies That Have Identified Relevant Units And Other Unidentified Relevant Units**

The second group of trucking Defendants comprises 19 companies that use at least some systems that are now licensed (but were unlicensed at the time suit was filed), but also have been identified by counsel as having other fleet management systems that preclude dismissing them from the case. Plaintiff believes these companies should be treated differently from the first trucking company group above.

Since this suit was filed, Plaintiff has entered into licenses with many device manufacturers, including Qualcomm and PeopleNet, which included Plaintiff's agreement to dismiss any trucking company using only fleet management systems from one of these companies. Such companies were identified to Plaintiff by counsel, and were dismissed. But counsel also identified to Plaintiff companies who had some systems from the licensed manufacturers, but also used relevant systems from other non-licensed manufacturers, such that the dismissal of the company entirely from the case was not appropriate. 17 of these 19 companies partially use Qualcomm units, and were represented by the same counsel as Qualcomm at the time of the settlement (they since have new counsel). Qualcomm's counsel, who was also counsel for those 17 defendants at the time, had Plaintiff's counsel prepare a letter, which they forwarded to their clients, which stated in pertinent part:

> QUALCOMM and Plaintiff have entered into a confidential settlement agreement. As a customer of Qualcomm, your Company's use of any [Qualcomm] product is now fully licensed. . . . Conversely, your Company's use of electronic position-based fleet management and tracking systems other than those supplied by Qualcomm is not licensed. . . . To facilitate [settlement] discussions, please be prepared to discuss the number of non-licensed fleet management systems used by your Company.

The other 2 of the 19 companies are partial PeopleNet users, and PeopleNet's counsel sent them a similar letter, and similarly identified them as a company that used relevant fleet management systems such that the license to PeopleNet did not warrant their complete dismissal.

Thus, for 17 of 19 of these companies, their own original counsel indicated they have relevant fleet management systems that are not licensed. For 2 of the 19, the manufacturer's counsel indicated that was the case, and upon receipt of a letter similar to the one quoted above, neither company contacted Plaintiff to indicate they had no relevant units.

Honorable Donovan W. Frank
Honorable Steven E. Rau
February 10, 2012
Page 4

       Plaintiff's position with respect to these companies is that the Court should simply require them to identify to Plaintiff those fleet management systems they own or use that caused their counsel to believe the manufacturer's license did not warrant dismissing them entirely from the case.[4] Plaintiff would suggest that an appropriate time would be the same day as Plaintiff's contentions are due with respect to the other groups. Plaintiff does not think that is should be required to provide contention charts for now-licensed Qualcomm or PeopleNet systems as those systems are no longer relevant in the case. The only real issue remaining for these defendants is the remaining non-licensed fleet management systems they use, and for which their original counsel did not think dismissal was appropriate.

       **C.    Identification Of Use Of Licensed Devices By Trucking Companies**

       Plaintiff has now licensed a number of other manufacturers of fleet management systems, including Motorola, GE, CalAmp, and others.[5] Plaintiff believes it likely that some of the remaining trucking Defendants use at least some of those licensed systems. Plaintiff believes it could lead to early resolution, or possibly even dismissal, of some of the remaining Defendants if they would simply identify if they own or use such now-licensed systems (either because all of the particular Defendants' systems are licensed, or because the number of remaining unlicensed systems is *de minimis*. Plaintiff would suggest that the Defendants be ordered to at least identify that information to Plaintiff by the same date as the contentions are due.

**Conclusion**

       As set forth in this letter, Plaintiffs respectfully suggest the Court enter an order regarding initial contention disclosures in this case appropriate to the three differently situated groups of trucking-related Defendants outlined in this letter.

Respectfully Submitted,

*Bryan Farney*

Bryan Farney
Counsel for PJC Logistics LLC

---

[4] Indeed, Plaintiff was contacted by counsel for three such defendants this week, and after review of the remaining supposedly relevant fleet management systems with new counsel, agreed they did not infringe and the parties will be filing dismissals shortly.

[5] The licensed manufacturers include: PeopleNet; Qualcomm; Fleetilla; DriverTech; CalAmp; GPS Insight; Procon (and related entities); Radio Satellite Integrators; Telogis; Wireless Matrix; Chapman Command Center; Fleetronix; GenX Mobile; Feeney Wireless; IndusTrack; Motorola Solutions; AssetWorks; GE Capital Fleet Services; NetworkFleet; and WebTech Wireless.