UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: VEHICLE TRACKING AND SECURITY SYSTEM ('844) PATENT LITIGATION<br><br>This Document Relates to All Actions | MDL No. 11-2249 (DWF/SER)<br><br>ORDER REGARDING THE SUFFICIENCY OF PJC'S INFRINGEMENT CONTENTIONS |

INTRODUCTION

This matter is before the Court on the following motions: Defendants' Motion to Preclude PJC Logistics LLC ("PJC") from Pursuing Claims of Infringement Not Included in PJC's Infringement Claim Charts (Doc. No. 142) brought by FleetMatics USA, LLC ("FleetMatics"), SageQuest I, LLC ("SageQuest"), Xata Corporation ("Xata"), Mercedes-Benz USA, LLC ("MBUSA"), and joined by Hyundai Motor America ("Hyundai") (Doc. No. 165) and Toyota Motor Sales U.S.C., Inc. ("Toyota");[1] Xata's Motion to Preclude PJC from Advancing any Additional Infringement Contentions (Doc. No. 143); Hyundai's Motion Regarding the Sufficiency of PJC's Infringement Claim Charts (Doc. No. 169); and a Motion for Sanctions brought by Mercedes-Benz (Doc. No.

---

[1] Toyota filed a Memorandum in Support of its Motion to Preclude PJC from Pursuing Infringement Theories Not Adequately Disclosed in Its Contentions and To Permit Discovery into PJC's Pre-filing Investigation (Doc. No. 28 in Civ. No. 12-1315), which the Court treats as being filed in support of the Defendants' Joint Motion.

156).[2]

For the reasons set forth below, the Court grants the pending motions insofar as they seek to preclude PJC from offering contentions or facts not set forth in its most recently submitted claim charts to each respective Defendant, absent a future showing of good cause to supplement.

## BACKGROUND

This MDL relates to PJC's claims that various defendants infringe U.S. Patent No. 5,233,844 (the '844 Patent), entitled "Vehicle Tracking and Security System." Since the initiation of this MDL, Defendants have raised concerns about the sufficiency of PJC's pre-suit investigation. After some debate over which side should proceed first with early infringement contentions and disclosures, on February 25, 2012, the Court issued Pretrial Order No. 3, requiring PJC to come "forward first with detailed infringement contentions and a detailed factual basis for each such contention before seeking discovery from Defendants." (Doc. No. 44 at 1.) The Court also gave specific direction as to the required content of the claim charts:

> Plaintiff shall submit its Claim Chart identifying the following: (1) which claim(s) of its patent(s) it alleges are being infringed; (2) which specific products or methods of Defendants' it alleges literally infringe each claim; and (3) where each element of each claim listed in (1) is found in each product or method listed in (2), including the specific factual basis for each contention that the element is present. If there is a contention by Plaintiff that there is infringement of any claims under the doctrine of equivalents, Plaintiff shall separately indicate this on its Claim Chart and, in addition to the information required for literal infringement, Plaintiff shall also explain each function, way, and result that it contends are equivalent, and why it contends that any differences are not substantial.

---

[2]   All defendants listed above are collectively referred to as "Defendants."

(Doc. No. 44 at 2.) Pretrial Order No. 3 also provided Defendants with instructions for responding to PCJ's claim charts.

PJC has provided the Defendants with claim charts, many of which have been supplemented one or more times after receiving objections that the claims charts were deficient. Defendants continue to contend that the claim charts, even as supplemented, are insufficient.

## DISCUSSION

### I.  Legal Standard

Infringement contentions serve an important purpose in patent cases by requiring a plaintiff "to crystallize its theory of the case and patent claims." *See, e.g.*, *InterTrust Techs. Corp. v. Microsoft Corp.*, Civ. No. 01-1640, 2003 U.S. Dist. LEXIS 22736, at *8 (N.D. Cal. Nov. 26, 2003). As noted in *InterTrust*, "[t]he overriding principle of the [Northern District of California's] Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Id.* at *6.[3] "[W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the Patent Rules require, the case takes a

---

[3]  The requirements of Form 4 of the Local Rules for the District of Minnesota, under the heading of "Discovery Relating to Claim Construction Hearing," are consistent with the procedure laid out in the local rules for the Northern District of California insofar as those rules require the plaintiff in a patent infringement case to come forward first—and separately for each opposing party—with a "Disclosure of Asserted Claims and Infringement Contentions" containing a specific factual basis for each infringement contention. *See* L.R. 3-1 of the Patent Local Rules for the N. Dist. of Cal.

clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. TX. 2005).

When confronted with deficient infringement contentions, the Court can issue "further just orders." Fed. R. Civ. P. 37(b)(2)(A). In particular, Federal Rule of Civil Procedure 37(b)(2)(A) provides, in relevant part:

> b) **Failure to Comply with a Court Order**
> . . . .
> (A) *For Not Obeying a Discovery Order.* If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following
> . . . .
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters as evidence;
> . . . .
> (iv) staying further proceedings until the order is obeyed.

Fed. R. Civ. P. 37(b)(2). Thus, should the Court determine that the infringement contentions are deficient, the Court can compel supplementation of the insufficient contentions, stay response deadlines, strike subsequent contentions not included in the earlier disclosures, or fashion other appropriate relief.

### III. Joint Motion to Preclude (Doc. Nos. 142, 167):[4]

The joint motion to preclude addresses the alleged deficiencies in PJC's claim charts that are common to each defendant who has joined this motion (the "Joint

---

[4] Any alleged deficiencies in PJC's infringement claim charts that are unique to particular defendants have been addressed in the separate motions filed by those defendants.

4

Defendants"). Joint Defendants contend that PJC's infringement claim charts fail to detail the factual basis for each asserted theory of infringement. In particular, Joint Defendants assert that PJC has failed to provide a factual basis for infringement under the doctrine of equivalents and under the theory of indirect infringement.

PJC's infringement claim charts state the following with respect to its theory of infringement under the doctrine of equivalents:

> To the extent that [Defendant] alleges that a claim element is not present in the accused product, PJC contends that the accused products also meet each element under the doctrine of equivalents. More specifically, in its investigation and analysis of the accused product, PJC did not identify any differences between the product and any claim element, and thus, any difference [Defendant] may identify is clearly insubstantial, and the product performs the same function in substantially the same way with substantially the same result as the claim elements.

(*See, e.g,* Doc. No. 70, Ex. 3 at n.1 (Xata); Doc. No. 70, Ex. 4 at n.1 (Xata); Doc. No. 79, Ex. 1 at n.1 (FleetMatics).) Joint Defendants assert that these contentions are inadequate, specifically because PJC failed to identify which claims of the '844 Patent PJC believed Joint Defendants infringed under the doctrine of equivalents, and additionally because PJC failed to explain each function, way, and result that PJC contends are equivalent, as required by Pretrial Order No. 3. Joint Defendants also take issue with PJC's claim charts because they claim the charts do not make any allegations of indirect infringement and provide no basis for such allegations. As a result of these alleged deficiencies, Joint Defendants seek an order precluding PJC from arguing infringement under the doctrine of equivalents or indirect infringement in this case.

Toyota also objects to the claim contentions relating to the doctrine of equivalents that are contained in the claim charts that PJC provided Toyota. Toyota points out that,

5

similar to the claim charts provided to other Joint Defendants, PJC included a single footnote on the first page of its claim chart which reads:

> To the extent that Defendant alleges that a claim element is not present in the accused product, PJC contends that the accused products also meet each element under the doctrine of equivalents. More specifically, in its investigation and analysis of the accused product, PJC did not identify any differences between the product and any claim element, and thus, any difference Defendant may identify is clearly insubstantial, and the product performs the same function in substantially the same way with substantially the same result as the claim elements.

(Doc. No. 29 in Civ. No. 12-1315, Ex. 1 at 1 n.1.) Hyundai also joins Joint Defendants' motion, arguing that the claim charts served on it suffer the same defects as those served on Joint Defendants. (Doc. No. 167.)

PJC contends that Defendants have no legal or factual basis for seeking to preclude PJC from pursuing claims for indirect infringement and infringement under the doctrine of equivalents. PJC points out that discovery has not begun and that barring these claims at this early stage of litigation is unwarranted. PJC also submits that its claim charts are sufficient and provide sufficient notice to Defendants. In particular, PJC maintains that its contentions with respect to the doctrine of equivalents do provide guidance when viewed in conjunction with the substance of PJC's infringement contentions. PJC also asserts that a number of claim limitations are software-driven features, and the details concerning these limitations must be fleshed out through discovery of proprietary materials, such as source code.

With respect to its contentions of indirect infringement, PJC points to the following language in its claim charts:

6

> PJC contends that [Defendant] directly infringes each asserted claim of the '844 patent. In addition, [Defendant] induces infringement of each asserted claim by instructing, through, among other things, the provision of instructions and/or help menus and/or other educational tools, and causing its customers to, among other things, use the accused products. In the same manner, [Defendant] contributes to the infringement of the '844 patent by its customers by virtue of the fact that the accused system as sold and used has no substantial noninfringing use.

(*See, e.g.*, Doc. No. 70, Ex. 3 at n.1.) PJC submits that this provides adequate notice to Defendants of indirect infringement.

The Court has carefully reviewed PJC's infringement contentions in light of the requirements set forth in Pretrial Order No. 3 and concludes that with respect to the doctrine of equivalents and indirect infringement, PJC's contentions are insufficient. In Pretrial Order No. 3, the Court specifically ordered that:

> If there is a contention by Plaintiff that there is infringement of any claims under the doctrine of equivalents, Plaintiff shall separately indicate this on its Claim Chart and, in addition to the information required for literal infringement, Plaintiff shall also explain each function, way, and result that it contends are equivalent, and why it contends that any differences are not substantial.

(Doc. No. 44 at 2.) PJC, after several opportunities, has simply not complied with the requirements of Pretrial Order No. 3 with respect to its infringement contentions under the doctrine of equivalents. Moreover, the Court concludes that PJC's contentions also provide an insufficient basis for an allegation of indirect infringement in the claim charts provided to Joint Defendants. PJC's failure to comply with Pretrial Order No. 3 by insufficiently articulating its theories of infringement has also prevented PJC from adequately streamlining its theory of the case. Therefore, the Court concludes that it is appropriate to preclude PJC from pursuing claims of infringement under the theory of

7

indirect infringement and under the doctrine of equivalents against Joint Defendants. However, in so holding, the Court notes that, consistent with the law in this District, the Court will allow PJC to supplement its infringement contentions should it be able to, upon a formal motion, make an appropriate showing of good cause. *See, e.g.*, *ICON Health & Fitness, Inc. v. Octane Fitness, LLC,* Civ. No. 09-319, 2010 WL 1839321, at *1 (D. Minn. May 5, 2010). The Court also notes, however, that the history of this case, and in particular PJC's multiple opportunities to provide more complete infringement contentions, will be factored into whether PJC can demonstrate good cause and appropriate diligence.

### III. Motion to Preclude filed by Xata, Hyundai, and Toyota

Xata, Hyundai, and Toyota also move to preclude PJC from pursuing infringement contentions other than those expressed in its most recently served claim charts. These motions focus on PJC's claims of literal infringement. In particular, these defendants claim that after multiple attempts, and a months-long dispute, PJC's infringement claim charts fail to provide a factual basis for its allegations that each of the specific elements of claims 7 and 12 of the '844 Patent are present in the defendants' respective accused systems. (Doc. No. 171 at 2; Doc. No. 148 at 11-12 Doc. No. 28 in Civ. No. 12-1315 at 10.) These Defendants further argue that PJC failed to describe factual bases for its contentions.

> In Pretrial Order No. 3, the Court ordered that PJC's claim charts must identify:
>
> (1) which claim(s) of its patent(s) it alleges are being infringed; (2) which specific products or methods of Defendants' it alleges literally infringe each claim; and (3) where each element of each claim listed in (1) is found

> in each product or method listed in (2), including the specific factual basis
> for each contention that the element is present.

(Doc. No. 44 at 2.) The Court briefly summarizes a few examples of the alleged deficiencies asserted by the moving defendants:

Xata argues that: (1) regarding claim 7, PJC contends that there is uniformity of all fleet management systems, relying on an unsupported and biased expert declaration, and still improperly contends that it needs discovery (access to Xata's source code) to articulate a reasonable basis; and (2) with respect to claim 12, PJC just recently (and after more than a year of litigation) identified the "panic button" feature, despite the fact that information on this feature has been publicly available for years. (Doc. No. 148 at 12-13.) Xata argues that while more serious penalties may be warranted, it only seeks to hold PJC to its present contentions.

Hyundai argues that: (1) claim 7 of the '844 Patent requires an input unit (that responds to events or conditions in the vehicle and provides information regarding the event or condition) and claim 12 requires a vehicle condition sensor, but PJC's claim charts do not identify either an input unit or vehicle condition sensor that is present in Hyundai vehicles, and PJC does not provide any factual basis as to how an identified data bus connector responds to events or conditions; and (2) claim 7 requires a "location unit" and claim 12 requires a "satellite receiver" and that both of these elements are claimed as being "responsive to satellite position information including latitude, longitude, and time" such that the claim requires that the received signal include data relating to the latitude and longitude of the satellite, and that PJC's claim charts contain no evidence that Hyundai vehicles include this element. (Doc No. 171 at 3-4.) In light of PJC's alleged

failure to provide meaningful claim charts containing specific facts and contentions concerning Hyundai's accused system, Hyundai seeks an order precluding PJC from offering into evidence at trial or on summary judgment any theories, contentions or specific facts not disclosed in PJC's June 7, 2012 infringement claim charts.

Toyota argues that: (1) PJC failed to provide any evidence that the "in response to" limitation of claim 7 is satisfied by Toyota's accused system (Toyota Safety Connect system); (2) PJC failed to allege that the accused system meets claim 12's requirement of a "vehicle condition sensor for generating signals varying with the operation of the vehicle"; and (3) PJC failed to conduct any actual testing and instead improperly relied on a Toyota patent. (Doc. No. 28 in Civ. No. 12-1315 at 10-11.) In light of these inadequacies, Toyota seeks both an order that PJC is precluded from pursuing claims of infringement that are not adequately disclosed in its infringement contentions and an order allowing Toyota to obtain limited discovery regarding any pre-suit infringement analysis or investigation that PJC conducted prior to filing suit against Toyota. (*Id.* at 13.)

PJC argues that its claim contentions are sufficient and contain more than enough specificity to put these Defendants on notice of PJC's theory of infringement. PJC also asserts that the relief requested here is improper and if the Court deems PJC's infringement contentions to be insufficient, a proper remedy would be to require supplementation, which PJC notes is permitted in this District upon a showing of good cause. PJC suggests that these Defendants' request for relief would conflict with the law

of the District by foreclosing future supplementation regardless of whether good cause can be shown.

     Here, the Court issued a specific order detailing what was required in PJC's infringement contentions—namely, requiring PJC to identify "where each element of each claim . . . is found in each product or method" and to describe "the specific factual basis for each contention that the element is present." (Doc. No. 44 at 2.)  Upon careful review of PJC's claim charts and the arguments of the parties, the Court is of the view that PJC's infringement contentions fail in several ways to comply with the requirements of Pretrial Order No. 3.  In particular, PJC's infringement claim charts fail to provide a specific factual basis for each contention that the specific elements of claims 7 and 12 of the '844 Patent are present in the defendants' respective accused systems.  Considering that PJC has had multiple opportunities to supplement its contentions, the Court deems it appropriate to hold PJC to its present contentions.  Thus, the Court concludes that PJC is precluded from offering contentions or facts not set forth in its most recently submitted claim charts.[5]  The Court will not, however, issue an order that would foreclose any possibility of future supplementation upon a showing of good cause.  Despite the ability to move for future supplementation, the Court cautions PJC that its current claim

---

[5]     The Court notes that it need not necessarily find any particular inadequacy to limit PJC to the contents of its present infringement contentions, as the purpose of infringement contentions, in any event, is to mark a clear and narrow path for discovery, issues for *Markman*, summary judgment, etc.  Therefore, in submitting its present claim charts, PJC has already marked that path.

contentions will determine the scope of the case, and therefore will shape discovery, dispositive motions, the *Markman* hearing, etc.

## IV.     MBUSA's Motion for Sanctions

MBUSA brings a separate motion for the following sanctions: (1) to recover attorney fees MBUSA incurred as a result of PJC's violation of the Court's Pretrial Order No. 3; and (2) to obtain discovery of the investigation that PJC conducted prior to filing suit against MBUSA.[6]  MBUSA's motion centers on complaints similar to those posed by other defendants above.  In short, MBUSA asserts that PJC was ordered by the Court to disclose its contentions of infringement, but has failed to do so after several attempts.  In particular, MBUSA submits that PJC violated the Court's Pretrial Order No. 3 because it has failed to identify where each claim limitation is present in the MBUSA's "mbrace" system, and has failed to disclose a factual basis for its infringement claims.  MBUSA asserts that in PJC's latest revision of its infringement contentions, PJC indicated that it had been able to procure a current MBUSA system, but offered no explanation for why PJC had just analyzed the accused product five months after PJC sued MBUSA.  MBUSA submits that due to PJC's violation of Pretrial Order No. 3, it is entitled to attorney fees under Rule 37 of the Federal Rules of Civil Procedure, as well as discovery concerning PJC's pre-suit investigation.

Consistent with the Court's decisions above, the Court deems it appropriate to preclude PJC from offering contentions or facts not set forth in its most recently

---

[6]     Toyota similarly requested permission to conduct discovery into PJC's pre-filing investigation.  (Doc. No. 28 in Civ. No. 12-1315.)

submitted claim charts to MBUSA, absent a showing of good cause to supplement in the future.  The Court also declines to issue sanctions or permit discovery concerning PJC's pre-suit investigation at this time.  In the event, however, that PJC brings a motion to supplement its claim contentions, and the motion is denied, Defendants will likely be entitled to attorney fees and costs.

## CONCLUSION

For the reasons stated above, the Court issues the following **ORDER**:

1. Defendants' Motion to Preclude PJC from Pursuing Claims of Infringement Not Included in PJC's Claim Charts (Doc. Nos. [142], [165]); Xata's Motion to Preclude PJC from Advancing any Additional Infringement Contentions (Doc. No. [143]); Hyundai's Motion Regarding the Sufficiency of PJC's Infringement Claim Charts (Doc. No. [169]); and MBUSA's Motion for Sanctions (Doc. No. [156]) are **GRANTED IN PART** as follows:

    a. PJC is precluded from modifying its most recently served infringement contentions, absent a showing of good cause to supplement; and PJC is precluded from offering contentions or facts, or pursuing claims of infringement, not set forth in its most recently submitted claim charts

    b. PJC is precluded asserting infringement under the doctrine of equivalents or indirect infringement, absent a showing of good cause to supplement.

Dated:  August 30, 2012                     s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge